NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12036

COMMONWEALTH  vs.  DONALD DUSTIN.

November 23, 2016.

Assault and Battery.  Words, "Substantive dating relationship."

After a jury trial, the defendant, Donald Dustin, was convicted in the Marlborough Division of the District Court Department of assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (a).[1]  We granted the defendant's application for direct appellate review to consider the "substantive dating relationship" element of § 13M (a).[2]  We affirm.

---

[1] The defendant also was convicted of reckless operation of a motor vehicle, in violation of G. L. c. 90, § 24.  He makes no argument with respect to this conviction, and we do not consider it.  The jury returned a verdict of not guilty of a charge of strangulation, in violation of G. L. c. 265, § 15D (b).

[2] We acknowledge the amicus brief submitted by Tyrone Stampley.  We decline, however, to address the argument put forth in the amicus brief that G. L. c. 265, § 13M, is unconstitutionally vague.  "An amicus may not argue issues not raised by the parties."  Robinson v. State Ballot Law Comm'n, 432 Mass. 145, 147 n.4 (2000).  See generally C.O. v. M.M., 442 Mass. 648, 650 (2004) (considering same statutory language in context of G. L. c. 209A; "[b]ecause [G. L. c. 209A] enumerates four factors to be considered in determining the existence of a 'substantive dating relationship,' there is sufficient language in the statute to enable [fact finders] to make informed and consistent determinations").

1. _Timing of the defendant's motion._  The defendant did not make a timely motion at the close of the Commonwealth's case for a required finding of not guilty with respect to the assault and battery charge.[3]  See Mass. R. Crim. P. 25 (a), as amended, 420 Mass. 1502 (1995).  See also Commonwealth v. Brown, 449 Mass. 747, 762 (2007).  Had he done so, we would have considered only the evidence admitted during the Commonwealth's case-in-chief to decide "whether the Commonwealth presented sufficient evidence of the defendant's guilt to submit the case to the jury."[4]  Commonwealth v. Platt, 440 Mass. 396, 400 (2003).  See Brown, supra; Commonwealth v. Berry, 431 Mass. 326, 331-332 (2000).  Cf. Commonwealth v. Hurley, 455 Mass. 53, 69 n.15 (2009) (motion for required finding filed "after the Commonwealth has rested and before the defense was invited to present evidence" must be ruled on at that time).  Instead, we consider whether the evidence during the entire trial, including the evidence presented during the defendant's case, was sufficient to sustain the conviction.

2. _Factual background._  A detailed description of the events of August 28, 2014, which gave rise to the criminal charges, is unnecessary to this appeal.  It suffices to say that

---

[3] The defendant's challenge to the sufficiency of the evidence of a "substantive dating relationship" was first made after the Commonwealth had rested and after the defendant had called his first witness, the witness had completed his testimony, and he had been excused.  Unless a defendant moves for a required finding after the Commonwealth rests its case and before he begins his own, his rights are not fixed at that point for purposes of evaluating the sufficiency of the evidence under Mass. R. Crim. P. 25 (a), as amended, 420 Mass. 1502 (1995).  The defendant has not raised, in this direct appeal from his conviction, any claim of ineffectiveness of his counsel at trial.

[4] The point is of substantial significance here, because both the defendant and Stacey Rock testified about the nature of their relationship, essentially filling any gap in the Commonwealth's case.  [5] General Laws c. 209A, § 1 (e), instructs courts to consider the following factors when determining whether a "substantive dating" relationship exists for purposes of c. 209A:  "(1) the length of time of the relationship; (2) the type of relationship; (3) the frequency of interaction between the parties; and (4) if the relationship has been terminated by either person, the length of time elapsed since the termination of the relationship."

in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), there was evidence at trial that the defendant and Stacey D. Rock were in a parked vehicle when a witness observed an altercation between the two of them. After they were confronted by the witness, the defendant drove off at a high rate of speed and he was stopped a short time later for various motor vehicle infractions. A police officer testified that when he asked the defendant why he had been driving "that way," the defendant replied, "something to the nature of that he was pissed off because he had just got in a fight with his girlfriend and that he knew he was driving like an idiot." The defendant indicated to the officer that Rock was his girl friend. This was the state of the evidence when the Commonwealth rested its case.

The defendant testified in his own defense, and Rock testified as well. Rock said that she had met the defendant several months before the incident. They developed a friendship; the relationship evolved as "boyfriend-girlfriend"; and they began dating. Although they were exclusive to one another, they did not live together. Rock testified that they "got along beautifully. Great friends." The defendant agreed that they had a "[f]riendship at first and then boyfriend-girlfriend," and he described the relationship as "awesome," "great," and "probably the best." Rock acknowledged that their dating ("boyfriend-girlfriend") relationship did not end immediately after the incident.

There also was other evidence about the defendant's relationship with Rock. The defendant had cared for Rock while she was recovering from a medical issue; he "nursed her back" to health. He also drove her motor vehicle. On the day in question, they spent "a good part of the day" together, first at her home, and then doing errands. The altercation for which the defendant was charged was, according to the defendant, brought on by Rock accidentally calling him by her former boy friend's name. Rock also insisted, both to the witness and to the police officer, that there was no problem between her and the defendant, and "beg[ged] them" not to arrest the defendant.

3. Discussion. The defendant claims that the evidence was insufficient to support a conviction under G. L. c. 265, § 13M. Subsection (a) of the statute provides:

"Whoever commits an assault or assault and battery on a family or household member shall be punished . . . ."

Subsection (c) of § 13M provides:

"'family or household member' shall mean persons who (i) are or were married to one another, (ii) have a child in common regardless of whether they have ever married or lived together or (iii) are or have been in a substantive dating or engagement relationship."

Only the last definition is at issue in this case.

Because the defendant did not make a timely motion for a required finding at the close of the Commonwealth's case, we consider whether the evidence during the entire trial:

"viewed in a light most favorable to the Commonwealth, is sufficient so that the [fact finder] 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.'"

Commonwealth v. McGovern, 397 Mass. 863, 868 (1986), quoting Commonwealth v. Chappee, 397 Mass. 508, 519 (1986). The only issue on appeal is whether the evidence is sufficient to permit an inference that Rock was a "family or household member," on the ground that she and the defendant "are or have been in a substantive dating . . . relationship." G. L. c. 265, § 13M (c) (iii). The statute further instructs that:

"the trier of fact shall determine whether a relationship is substantive by considering the following factors:  the length of time of the relationship; the type of relationship; the frequency of interaction between the parties; whether the relationship was terminated by either person; and the length of time elapsed since the termination of the relationship."

Id. These factors are essentially identical to the factors set forth in G. L. c. 209A to determine whether a "substantive dating relationship" exists for purposes of that statute, which authorizes a person involved in a "substantive dating relationship" to obtain a civil abuse prevention order. See G. L. c. 209A, § 1.[5]  See also E.C.O. v. Compton, 464 Mass. 558,

_____

[5] General Laws c. 209A, § 1 (e), instructs courts to consider the following factors when determining whether a

564 (2013); Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 142 (2006) ("conduct proscribed as abuse 'closely approximates the common-law description of assault'" [citation omitted]). In determining the sufficiency of the evidence of a "substantive dating relationship" under G. L. c. 265, § 13M (c), and in otherwise interpreting and applying that statue, we therefore are guided by cases arising under c. 209A.

As we said in C.O. v. M.M. 442 Mass. 648, 650-651 (2004), with respect to c. 209A:

> "[b]ecause the statute enumerates four factors to be considered in determining the existence of a 'substantive dating relationship,' there is sufficient language in the statute to enable judges to make informed and consistent determinations. We need not add to this language by interpretation."

That is no less true under c. 265, § 13M, even though the Commonwealth must prove the existence of such a relationship beyond a reasonable doubt under that statute.[6] Both statutes identify the prohibited conduct and require the fact finder "to adjudge the existence of substantive relationships by considering [the enumerated] factors." E.C.O., 464 Mass. at 564. These factors provide "explicit standards" both to ascertain culpability and to allow a person to conform his or her conduct accordingly (citation omitted). See Commonwealth v. Hendricks, 452 Mass. 97, 102 (2008). See also C.O., 442 Mass. at 654-656 (vacating abuse prevention order where judge failed to consider statutory factors and improperly relied on other considerations); Brossard v. West Roxbury Div. of the Dist. Court Dep't, 417 Mass. 183, 184-185 (1994) (sufficient evidence

---

"substantive dating" relationship exists for purposes of c. 209A: "(1) the length of time of the relationship; (2) the type of relationship; (3) the frequency of interaction between the parties; and (4) if the relationship has been terminated by either person, the length of time elapsed since the termination of the relationship."

[6] The statutes share a similar legislative purpose. "The Legislature enacted G. L. c. 209A in 1978 to address the problem of domestic violence." C.O., 442 Mass. at 651, citing St. 1978, c. 447, § 2. Similarly, G. L. c. 265, § 13M, was enacted "to establish a specific penalty for perpetrators of domestic abuse." St. 2008, c. 534 (preamble).

of "substantive dating relationship" for purposes of G. L. c. 209A, where defendant referenced victim as his "former girl friend" in other c. 209A proceedings, and alleged that he saw her two or three times per week, even though she was living with another man).[7]

In this case, the evidence was sufficient to permit the jury to find that Rock and the defendant were involved in a "substantive dating relationship" on August 28, 2014.  Both testified that they had been involved in the relationship for several months, and that it had developed into an exclusive "boyfriend-girlfriend" relationship.  They described their relationship as "good" or "great."  Among other things, the defendant took care of Rock when she had a medical condition; she allowed him to drive her vehicle; and they participated in daily activities together, such as running errands.  The defendant had recently given Rock a "friendship ring."  See Brossard, 417 Mass. at 184-185 (sufficient evidence to establish "substantive dating relationship where defendant referred to victim as his "former girlfriend"; saw her "two to three times a week"; and correspondence "reveal[ed] an emotional relationship which entailed substantially more than a few casual dates").[8]

Conclusion.  The evidence warranted a finding beyond a reasonable doubt that the defendant was involved in a "substantive dating relationship" with the person he was charged with assaulting, in violation of G. L. c. 265, § 13M (c), and therefore that conviction is affirmed.

So ordered.

---

[7] The factors enumerated in the proviso of G. L. c. 265, § 13M (c), are not themselves elements of the offense.  There does not need to be evidence as to each factor, let alone proof beyond a reasonable doubt as to any one or more of them.  They are simply the legislative criteria that the fact finder must consider in determining whether the "substantive dating relationship" element has been proved.  It is enough that the evidence on these factors, taken as a whole, warrants a finding of a substantive dating relationship beyond a reasonable doubt.

[8] The fact that there was less evidence on the "frequency of interaction" between the defendant and Rock, and more evidence as to "the length of time of [their] relationship" and "the type of relationship," is not dispositive.  See note 7, supra.  The evidence, taken as a whole, was sufficient to warrant the requisite finding of a substantive dating relationship.

Michael A. Waryasz for the defendant.

Melissa Weisgold Johnsen, Assistant District Attorney, for the Commonwealth.

Max Bauer, for Tyrone Stampley, amicus curiae, submitted a brief.